The next case is number 231045, number 231046, 231047, 231048, and 231049, Abraham Gimenez Plaintiff Group et al. versus the Financial Oversight and Management Board. At this time, would the counsel for the appellants please introduce themselves on the record to begin? Good afternoon, Your Honors. Attorney Jesus Bautista on behalf of all five plaintiffs, all five appellants in this case. If it pleases the Court, may I reserve three minutes for rebuttal? You may. Your Honors, today, appellants respectfully request that the District Court's November 3rd order, which denies appellants' respective administrative expense claims, be reversed for at least two reasons. First, the District Court erred in denying appellants' claim simply because liability had not yet been established. Second, the Court also erred in concluding that simply because services were rendered pre-petition, the claims did not qualify as administrative expense claims under Section 503B1Aii. Your Honors, before I delve into the merits, if I could just explain who the appellants are because I think it will be helpful for our presentation here this morning. I'll be brief. Collectively, appellants are approximately 10,300 current and former employees of the Commonwealth of Puerto Rico. Prior to consolidation in this appeal, appellants filed five distinct appeals, all related to the District Court's denial of their respective motions for administrative expense priority under Section 503B1Aii. Those appeals have now been consolidated. For purposes of this consolidated appeal this afternoon, appellants' claims will be segregated onto two groups. The first group is composed of those claimants whose claims had not been reduced to judgment pre-petition. The second group are those claimants whose claims have been reduced to judgment pre-petition.  First, Your Honors, we will address the appellants whose claims have not been reduced to judgment pre-petition. We will call these the pre-judgment claims. Counselor, let me ask you this. The Court thought that some of these claims were premature for a couple of different reasons, but didn't deny them. The Court said that it would just leave them to be resolved at the claim processing aspect of the bankruptcy case. Having administrative priority status, I'm just trying to figure out how your client is prejudiced by having a final resolution later on down the road. Excellent question, Your Honor. If I may address that, I will address that threefold. First, we would respectfully disagree in the totality that the Court did not deny some of these claims. In fact, with respect to some of the claims that were for pre-petition services, the Court outright denied those claims, and those are claims that had not been reduced to judgment. The Court simply stated that, pursuant to the Court's interpretation of the statute, those claims were disallowed. So a portion of the claims were, in fact, disallowed, and that's from the record of the case. Well, they're disallowed because they haven't been reduced to final judgment. The Court didn't prevent the litigation from proceeding in the Commonwealth Court. Well, with respect to the claims that were related to pre-petition services, the Court said in those cases that those claims did not qualify under Section 503 and disallowed those claims. She allowed or she agreed to attend at a later date claims that were still in litigation, but that were related to post-petition wages and services. But again, the claims that were related, that were still in litigation, but that were related to pre-petition wages and services, which is a substantial group, those were disallowed. I'm not sure I understand, Counselor. Are you saying that the judge indicated that these pre-judgment claims, because they seem to reflect an argument that prior to the filing of the petition, these plaintiffs were not given pay raises, were not given a higher pay scale that they say they were entitled to, that even if they get a judgment, because that judgment will relate to conduct, if you will, work and denial that occurred pre-petition, they will not be eligible for administrative expenses. She's already signaled that? Is that what you're saying? That is correct, Your Honor. When we refer to this group of pre-judgment claims, there are, in that group, there are, in fact, two additional subgroups. The pre-judgment claims, claims that are still being litigated, there were certain claims that were related to pre-petition services. Those claims, the court disallowed. The court didn't? Disallowed. Disallowed. Okay. There's a subgroup to that. Wait a minute. The court disallowed them having administrative priority. Are you saying that the court disallowed them to the extent that they're now listed as unsecured creditors? No. My apology. The court is correct. There were, she disallowed or denied administrative expense priority status to those claims. Okay. If I may go back. But what's the impact of that? I mean, she did it, which means, I gather, the money won't be set aside? I mean, is that the impact of that? There are a couple of impacts, Your Honor. First, we believe just as a matter of law, it's an incorrect interpretation of the statute. Claims are allowed under Section 503, based on the text of 503. And 503 does not incorporate a requirement that liability be adjudicated prior to allowance. Are you, once again, are you saying that the impact of that is that they are relegated to the classification of unsecured creditors, therefore having no priority in the pecking order when distribution is made? That is correct. And our second point, with respect to whether it's harm or fault, and this is something that we address in our papers, there is an economic detriment. A claim that has not, let's take, for example, Your Honors, Section 502 of the Bankruptcy Code. Section 502 of the Bankruptcy Code deems allowed a claim as filed. Whether there will be payment of that claim, that's an issue to be decided at a later point. But that claim is deemed allowed. In this particular case, appellants were seeking that their claims be deemed allowed for administrative expense priority status. Although in the motions, appellants clarified that they were not seeking immediate payment. Having allowed administrative status has this economic value to that. Number one, as the Court just stated, the pecking order or the priority in the distribution pecking order. Second, as the Court may be aware, there's a significant secondary market for the transfer of these claims. All of that was lost at the moment the Court decided that she would not undertake the analysis of allowance under Section 503 merely because liability had not been adjudicated. As we state in our papers, there's, we say, three or four cases for the proposition that liability is not a condition precedent. It's not a requirement for allowance of a 503 claim. The appellant's position is that the Court could have undertaken the analysis, could have allowed those claims, yet withheld the obligation of payment because, in fact, appellants specifically stated in their motions that they were not seeking immediate payments, payment on those claims. That is with respect to the prejudgment claims. In addition, we have a separate or secondary group of appellants, which are appellants who have post-judgment claims. These appellants, prior to the petition date, had litigated their claims in the Puerto Rico State Courts and had obtained a judgment against the Commonwealth of Puerto Rico. The Court disallowed those claims as well on the theory that because those services were rendered pre-petition, they could not be an allowed administrative claim under the Court's interpretation of Section 503A1. Our position, Your Honor, would be to refer the Court back to what we state in our documents, that Section 503B1AI and III. III was recently added to the Code after BAP-CIPA. We cite the scant case law on the matter, but the case law that we cite is identical to the case law that is cited by appellees. Most of the case law recognizes that Section 503B1AII enlarged and expanded the classes of claimants who can receive administrative allowance status under 503. Our position is that the Court merely looked at 503B1A I. And without taking into consideration 503B1A III, we believe it is significant because the analysis undertaken by the Court under the single I, my apologies, the analysis taken under the Court under the single I pays no value or tells to consider the fact that by adding double I, Congress enlarged the pool of claimants that could receive administrative claim authorization. So in this group that you're now describing, the fact that they obtained a judgment, I gather confirming their entitlement to these additional wages for work that was performed pre-petition, that is not, that timing is not a bar to their claim that they should now get administrative expense priority post-petition. Is that, and the District Court just said, nope, it's black letter law that work for which they're claiming higher wages, that was done pre-petition, they're out of luck. That was just, that's the legal error that you're citing. Is that correct? That is correct, Your Honor. The Court undertook the analysis strictly under 503B1A single I, which prior to the CPAC was limited and stated that in order to receive allowance, you needed to perform services post-petition. So does it, actually doesn't the Court's ruling on this group that we're now talking about, doesn't that signal the position that the Court will be taking with respect to this other group? Because even if they obtain judgments now, it will be for work that was done pre-petition. So isn't she signaling that she'll decline their eligibility for priority status for administrative expenses for the same reason that she's articulating here? Doesn't? If I may, Your Honor, I'm out of time. If I may respond to the question. Perhaps she is, Your Honor, but let me clarify with respect to the claimants. Again, the claimants that are still in litigation, with respect to the claimants that are still in litigation, whose claims relate to pre-petition services, the Court declined or did not allow or already stated that those claims are not allowed as administrative claims. We take, we take an objection to that. Appellant's position is that by introducing double I into Section 503, it enlarged the group of claimants, and you're no longer restricted to just looking at whether the services were performed pre-petition or post-petition. Now, on the double I, it's a much broader spectrum, and you must look to whether the damages that flow from that conduct in any way impacted the claimant post-petition. In our brief, we explain that the damage that impacted our appellants from that pre-petition conduct has impacted them, has impacted them post-petition. Therefore, on the double I, which is a broader spectrum than just a single I, they would be entitled to administrative claim priority. Thank you. Thank you, Counsel. At this time, if Counsel for the Appellee would introduce themselves on the record to begin. Good morning, Your Honors. May it please the Court. Shiloh Rainwater on behalf of the Financial Oversight and Management Board for Puerto Rico as representative of the Commonwealth of Puerto Rico. For two primary reasons, the Title III Court properly held that appellant's back-day claims are not entitled to administrative expense priority. First, to the extent appellant's claims relate to work that they performed before the Commonwealth filed its Title III restructuring petition under PROMESA, those claims are not administrative expenses under the express terms of Section 503B of the Bankruptcy Code, which requires back-pay to be attributable to a post-petition period. And second, to the extent appellant's back-pay claims relate to work that was performed after the Title III case was filed, the Title III Court properly exercises discretion in deferring resolution of whether those claims are entitled to administrative expense priority because the claims are still being litigated in Commonwealth courts. I'll begin by addressing the pre-petition back-pay claims, which comprise the vast majority of what appellants seek in this case. The simplest reason those claims are not administrative expenses is because the statute expressly says that back-pay must be, quote, attributable to a period of time occurring after commencement of the case, end quote. That language squarely forecloses back-pay that is attributable to a period of time before the bankruptcy case. Appellants have no answer to that language, and so they ignore it. What was the point of B-2? What did that accomplish? I mean, it's got, it was part of that Bankruptcy Reform Act. I mean, the District Court didn't seem to take even, attribute any significance to it How do you read its significance? Your Honor, Subsection 2 does enlarge the class of claims that are entitled to priority status under Section 503B, but it protects a different type of claim and not a different temporal period during which the claim has accrued. And so Subsection 1 is protecting situations where there are services that are rendered to the debtor during the bankruptcy case, and a worker is not paid for those services. Subsection 2 is contemplating a situation where the debtor may have committed a violation of law before bankruptcy that resulted in the deprivation of wages after the bankruptcy. An example of this would be a wrongful discharge pre-petition that resulted in the deprivation of wages that would have been paid to the worker post-petition. Another example would be the type of case we have here. They are alleging that the Commonwealth implemented the federal minimum wage laws back in the with Puerto Rico law that required stratification of various wages for a progressive compensation system. If they're right, that that law had resulted in the deprivation of the minimum wage to which they are entitled after the commencement of the bankruptcy case, then that's what this type of language is contemplating. And that makes sense because the concept of administrative expenses are limited to post-petition expenses that are incurred by the debtor. This court has recognized and has explained that a debtor cannot successfully emerge from bankruptcy unless third parties, such as workers, are willing to provide necessary services to preserve the debtor's operations during the bankruptcy case. That is why the statute refers to actual and necessary costs and expenses of preserving the estate. It goes without saying that debts that are owed for pre-petition expenses, such as work that was performed before the petition was filed, are not necessary to preserve the debtor during its reorganization. That is why this court has drawn a bright line distinction between pre-petition and post-petition expenses and held that only wages that are attributable to a post-petition period are entitled to priority status. But this court has also recognized that administrative expense priority is a narrow exception to the fundamental rule of bankruptcy that similarly situated creditors should be treated the same in the bankruptcy and should have a ratable share of the debtor's limited resources. That is why this court has emphasized that administrative expenses should be construed narrowly and it would be a violation of the equality principle to afford priority status to wages that were incurred way before the bankruptcy case was filed, thereby unfairly advantaging workers over unsecured claim holders. This court has consistently adopted that interpretation in all of its cases that have addressed similar temporal language. The court's holding in Boston Regional was that language in the prior version of Section 503B of the Bankruptcy Code limited priority to wages that were related to work performed post-petition. That statute said that the actual and necessary cost and expenses of preserving the estate would include wages for services rendered after the commencement of the case, which is exactly the same temporal language that's involved in the new Subsection 2. Appellants do not cite a single case where a claim... What is your understanding of what Judge Swain reserved to resolve? Your Honor, Judge Swain reserved the question of whether the post-petition claims were entitled to administrative expense priority. The pre-petition claims are not entitled to administrative expense priority and she did disallow those claims. Appellants don't cite a single case where a claim for back pay related to pre-petition work was afforded administrative expense priority, whether in this circuit or anywhere else, nor do they explain how a pre-petition debt can possibly be an administrative expense of a bankrupt debtor. To adopt their approach would be literally unprecedented and it would radically expand the concept of administrative expenses. This Court should decline that invitation and hold that appellants' back pay claims are not administrative expenses under the statute's express terms. I'll now turn to appellants' post-petition back pay claims and provide some context at the outset to help crystallize why the Title III Court's decision to defer resolution of those claims was an appropriate exercise of her discretion to manage her docket. Appellants have been litigating their back pay claims in Commonwealth courts and in the Commission for Appeals for Public Service for years or even decades. None of those cases has resolved with respect to the post-petition amounts they seek. Appellants have not been denied awards in those cases. They've also not obtained them. Nevertheless, they moved for administrative expense priority under Section 503B of the Bankruptcy Code, which requires the existence of an award that establishes the debtor's liability for the back pay. Because the claims had not resolved in the underlying litigations yet, there was no basis to allow the claims at the time. There was also no basis to disallow those claims because they could potentially obtain an award in the future. Instead, the Title III Court properly exercised its discretion to defer resolving the issue until the claims are conclusively determined in the underlying cases, either by denial or a grant of their claims, or because the claims are settled and paid in the context of the ongoing claims reconciliation process in the Title III case. The Court did not disallow the post-petition claims. The Court recognized that appellants would have an opportunity to be heard on them, and they could possibly seek priority if they were able to obtain awards of back pay before the Title III case resolved. Appellants ignored that context, and they argued that the Title III Court was required to issue some relief at this stage, and although they backed away from the characterization that they sought immediate allowance and payment, that is expressly what their briefs below had sought, they also say on appeal that they should have at least been conditionally allowed pending the determination in the underlying cases of whether their claims are meritorious. But appellants' back pay claims cannot be immediately paid and allowed because they remain contingent upon ongoing litigations of Commonwealth courts. And as this Court has recognized, a contingent expense is not an administrative expense because it is not an actual expense of the debtor. I will acknowledge this is very confusing for me, and despite your best efforts, I'm still confused. That's probably my problem, not yours. But I think I hear your saying that what we're calling these pre-judgment plaintiffs, even if they are successful at some point in getting a decision from the Commonwealth Court that they have a good claim to these wages that they have not gotten for a long period of time, that they have no hope of getting the bankruptcy court to treat those as administrative expenses because they will have gotten a judgment that confirms their entitlement to increase wages on the basis of the work that was done pre-petition. So they're never going to get recognition as administrative expenses. Isn't that what you're saying? Correct, Your Honor. To the extent that the claims relate to pre-petition work. To the extent the claims relate to work that was performed pre-petition is built directly into the statute. I think it's important maybe to clarify the framing here that might be resulting in some of the confusion. It doesn't make a lot of sense to talk about pre-award and post-award or pre-judgment, post-judgment claims because the only judgment that these appellants have dates back to 2006 and therefore relates to work that was performed before the Commonwealth filed its petition in 2017. It doesn't matter that they have an award with respect to those claims because they cannot be entitled to administrative expense priority. Now with respect to the post-petition claims there will be a division of some claims that are entitled to priority if they obtain an award and other claims that are not if they don't obtain an award. But it's important to distinguish in the first instance between pre-petition and post-petition amounts. So in other words, you're not saying off the bat that the post-petition claims if they get reduced won't automatically be denied? Your Honor, if they obtain awards with respect to post-petition periods, they are entitled to move again in the Title III case and the Commonwealth would allow and pay the claims to the extent they relate to a post-petition period. But is it post-petition or post-petition work done to facilitate the orderly continuation of government? That's exactly right. Correct. And that's why the distinction exists because administrative expense priority is an exception to the equality of distribution principle and is a narrow exception that only applies if the expenses are specifically incurred while preserving the debtor. It cannot be that wages that were incurred before the bankruptcy was filed, in some cases in the 90s in this action, have anything to do with preserving the debtor's estate during the post-petition period. So Counselor, again what we're calling these pre-judgment plaintiffs, I mean they may get an award that will be kind of a mix. It will be for work that was done pre-petition and if this is an ongoing denial of wages to which they're entitled, they'll also be entitled to some of the award will be for work that they've done post-petition and it's that portion that may be eligible for administrative expense treatment? Is that what you're saying? Correct, Judge Lopez, and I think you're picking up on one of the reasons why it was appropriate for the Title III Court to decline issuing either a conditional allowance of appellant's claims or what they've called a comfort order in their briefs below. It didn't make sense in this context because there are so many variables with respect to what the awards will look like and what you picked up on is kind of the main one. All of these litigants have been prosecuting their claims since long before the bankruptcy case was commenced and they in those underlying cases have not differentiated between pre-petition and post-petition amounts because that's not what they're seeking. They're just seeking payment for all of it. If they get an award that awards everything from a post-petition period to the present, that award would have to be disaggregated to only be limited to the post-petition period and we're not saying that the post-petition period would not be entitled to priority, but it would need to be disaggregated from the pre-petition portion. I thought I heard you say that there's no temporal dimension to it that it applies to a certain type of award that has nothing to do with the time that the work was done. Did I misunderstand you? I believe so, Judge Lopez. I think that's my mistake. Subsection 2 has an identical temporal limitation as subsection 1. Both of those sections say that the wages have to be after, quote, after the commencement of the case. Although subsection 2 does add the word attributable to, it's the same temporal limitation. The difference between those two sections is that the wages that are actually earned in the course of the bankruptcy case, whereas subsection 2 is addressing situations where perhaps there was a constructive earning. So, for example, an abundance of the cases involve WARN Act violations where the debtor has discharged a large number of its employees on the eve of bankruptcy without giving the 60-day notice to which they were entitled under the WARN Act. And because the 60-day period often runs into the post-petition period, the courts in those cases are trying to figure out whether they are accruing their entitlement to some sort of liability under the WARN Act during a post-petition period. But they're not actually working during the post-petition period because they were terminated. So they are constructively earning wages that they would have earned had they not been terminated before the bankruptcy. There are other reasons why it's impossible to know in the abstract whether a conditional allowance or a comfort order or something else would be appropriate in this context. In addition... So who will make that decision? The bankruptcy judge, not the Commonwealth Court. My apologies, which decision, Your Honor? The decision as to which post-petition claims are appropriate for administrative expenses. The Bankruptcy Court makes that. Correct, Your Honor. If they have an award of post-petition expenses, the statute essentially makes that decision. It says that those claims are entitled to priority. There are questions on the margins of whether the entirety of the award would be entitled to priority, such as Judge Lopez was suggesting there might be amounts that are awarded for pre- and post-petition periods. There might be other aspects of the award that we have to disaggregate. For example, if they award attorney's fees or some sort of sanction or punitive damages against the Commonwealth, those portions of the award would not be entitled to priority under Subsection 2, and therefore would have to be disaggregated from the award. And in addition, it might not even be a monetary award itself. I see I'm out of time, Your Honors. If there's no further questions, I'll rest on the papers. Thank you, Counsel. At this time, Counsel for the Appellant, please reintroduce yourself on the record. You have a three-minute rebuttal. Good afternoon once again, Your Honors. I'm Jesus Batista on behalf of all five appellants in this case. I just have two brief points, so I'll be happy to take any questions that the Honorable Court has. First, Your Honor, I want to come back to this issue of the introduction of double I under Section 503B1A. Double I states, the new section, that there may be allowance for damages without, and this is a quote, without regard to the time of occurrence of unlawful conduct on which such award is based or to whether any services were rendered. That is a stark contrast to what was previously under Section 501B1A single I. That section that I just read is what has caused some confusion amongst the case law. The Board speaks this afternoon of appellants not having filed any case law. There's really scant case law throughout the country on this issue. In fact, there's no case law from our circuit on this issue. So when we cite, when appellants cite, when our police cite to Boston Regional, as we state in our papers, that is dated case law because it is case law that is pre-BAPSIPA. BAPSIPA introduced this provision, and the case law that we have cited almost universally stands for the proposition that this provision now changes the landscape as to what administrative claims can be allowed. So from that perspective, the case law from our circuit, which the Board has cited in their papers, we would argue that that is dated and is no longer applicable because we will need to re-delve into the code and then come up with a determination for what this provision states. So how are those claims necessary costs and expenses of preserving the estate? And that's the other piece of it. And I'm not it's not clear to me how that pay has anything to do with the state preservation. I think the questions out to the Board and the Board's response help us address that issue. A debtor needs employees to come out of bankruptcy. Employees who have been detrimented by their debtor pre-petition may or may not elect to continue performing or providing services to that debtor. Congress added this provision. So from Congressional perspective, we can then take or gather that Congress was subsection I, which was very limited. Is it your position that everyone's job is necessary for estate preservation or do you concede that the bankruptcy court would have to make a determination as to who was and was not necessary? I'm out of time, but if I may respond to that question. The bankruptcy court would have to make a determination. We cite some cases in our papers which address how the bankruptcy court would go about making that determination under the new subsection double I, which is as the judge previously stated, which the bankruptcy court and the district court in this case did not consider. And that is our concern. Thank you so much. Thank you, Counsel. That concludes the argument in this case.